IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 07-cv-00788-WDM

LOIS HANKS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

Claimant Lois Hanks (Hanks) appeals a final administrative decision by defendant Michael J. Astrue (the Commissioner) denying her claim for a Period of Disability and Disability Insurance Benefits under the Social Security Act (the "Act").

### Background

Hanks was born on April 5, 1950. She completed high school and has worked in the vocationally relevant past as computer chip production operator. Hanks alleges that she became disabled on December 31, 1994 due to diabetes mellitus, vision problems, necrotizing fasciitis, leg problems, and obesity. She has not engaged in substantial gainful activity since her onset. She was insured for disability benefits through December 31, 1999.

1.     Procedural History

Hanks first applied for disability benefits on October 15, 2004. Her application

was denied and she filed a timely request for a hearing. The hearing was held before Administrative Law Judge Richard J. Maddigan (the "ALJ") on April 25, 2006. The ALJ issued his opinion on August 21, 2006 determining that Hanks was not disabled within the meaning of the Act at any time through the date she was last insured—December 31, 1999. On February 23, 2007, the Appeals Council declined review of the ALJ's decision. Therefore, the ALJ's decision is the final administrative decision subject to review in this Court.

2.  Medical History

Hanks has had issues with obesity and hypertension since at least 1979. (Admin. R. at 341–43.) From that time through December 31, 1999, Hanks continued to have issues with hypertension and obesity and was additionally diagnosed with diabetes mellitus type II[1] and degenerative joint disease in at least her elbows, wrists, hands, and left ankle. *E.g.*, *id.* at 230–33, 240, 243, 245, 321, 326–33, 338–43, 350, 358, 373–380. In May 2000, after she was no longer insured for disability benefits, Hanks presented to Evans Army Hospital with a boil on her left thigh and was diagnosed with cellulitis.[2] *See*

---

[1] Diabetes mellitus is "a chronic metobolic disorder . . . caused by an absolute or relative deficiency of insulin and is characterized, in more severe cases, by chronic hyperglycemia, glycosuria, water and electorlyte loss, katoacidosis, and coma." Stedman's Medical Dictionary 110330 (27th ed. 2000). Type II is "characterized by insulin resistance in peripheral tissues as well as a defect in insulin secretion by beta cells." *Id.*

[2] Cellulitis is the "inflammation of subcutaneous, loose connective tissue." Stedman's Medical Dictionary 68620. More specifically, it is a "spreading bacterial infection of the skin, usually caused by streptococcal or staphylococcal infections, that results in severe inflammation with erythema, warmth, and localized edema." Tabor's Cyclopedic Medical Dictionary (2002) (under "cellulitis"). "Patients with diabetes mellitus are at increased risk for cellulitis because of the peripheral vascular disease, neuropathy, and decreased immune function associated with diabetes." *Id.*

*id.* at 116. After a surgical wound exploration, the diagnosis was changed to necrotizing cellulitis and fasciitis.[3] *See id.* at 117–18. Hanks was admitted to the hospital and treated for her condition including multiple wound explorations and debridements, skin grafts, and antibiotic treatments. *See, e.g., id.* at 117–120, 122–26, 128–31, 144, 146. Despite the treatments, however, she continued to have complications from her condition including difficulty ambulating, resulting in her use of a cane, and leg swelling. *Id.* at 181, 259, 261, 263–65. During this time, Hanks also suffered from back and leg pain and continued to fight her weight problem. (Admin. R. at 187–88, 191.)

Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence on the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985)). This court may "neither reweigh the evidence nor substitute [its] judgment for that of the

---

[3] Necrotizing fasciitis is "a rare soft-tissue infection primarily involving the superficial fascia and resulting in extensive undermining of surrounding tissues." Stedman's Medical Dictionary 145720. The condition "usually occurs postoperatively, after minor trauma, or after inadequate care of abscesses or cutaneous ulcers." *Id.*

3

[Commissioner]." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## Discussion

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [her] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). Generally, the burden to prove a disability lies on the applicant, however, at step five the burden shifts to the Commissioner to "show that the claimant retains sufficient residual functional capacity . . . to perform work in the national economy, given [her] age, education, and work experience." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). One method by which the Commissioner may meet his burden is through the use of the Medical-Vocational Guidelines found in Appendix 2, Subpart P, Regulations No. 4 (the "Guidelines") which administratively direct a finding of "disabled" or "not disabled" based on a claimant's age, education, work experience, and RFC. *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

Following this process in this case, the ALJ first determined that Hanks has not engaged in substantial gainful activity since her alleged onset date of December 31, 1994. In step two, the ALJ identified Hank's diabetes mellitus, hypertension, necrotizing

4

fasciitis of the left leg, and obesity as severe impairments when considered in combination. However, at step three, he determined that they were not severe enough to "meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4., on or before December 31, 1999[,] the date she is last insured for disability purposes." (Admin. R. at 19–20.) Next, the ALJ determined Hanks's residual functional capacity ("RFC") as being "capable of sedentary work activity" which "is generally performed while sitting and never requires lifting in excess of ten pounds." *Id.* at 21. The ALJ noted that "[j]obs are sedentary if walking and standing are required only occasionally i.e., very little up to one-third of the time, and other sedentary criteria are met as described in 20 CFR § 404.1567." *Id.* Based on this RFC, the ALJ concluded at step four that Hanks was not capable of performing her past relevant work as a computer chip production operator because this job required her to lift and carry trays weighing up to forty pounds. *Id.* at 22. However, relying on the Guidelines, the ALJ determined at step five that Hanks was not disabled. *Id.* The ALJ classified Hanks as a "younger individual" with a high school education whose previous work experience was "skilled or semiskilled—skills not transferable." *See id.* Therefore, pursuant to the Guidelines the ALJ found Hanks not disabled within the meaning of the Act at any time when she was insured. *Id.* (citing Rule 201.21 of Table No. 1, Part 404, Subpart P, Appendix 2).

On appeal, Hanks alleges that the ALJ erred in four respects: (1) in applying the Guidelines; (2) in weighing the opinion of Dr. Rudolphi regarding Hanks's medical issues prior to December 31, 1999; (3) in not finding that she had severe impairments; and (4) in determining Hanks's RFC.

5

1. <u>Guidelines Application</u>

First, Hanks argues that the ALJ erred at step five when he used the "younger individual" category in applying the Guidelines. The regulations divide claimants into one of four age categories: (1) "younger individual", ages 18–44; (2) "younger individual", ages 45–49; (3) "closely approaching advanced age", ages 50–54; and (4) "advanced age", ages 55 and above. Rule 201.00(f)–(h), Pt. 404, Subpart P, Appendix 2. These age categories impact the finding of disabled or not disabled because they approximate an individuals ability to adjust and adapt to a new work environment. *See id.* However, to alleviate some of the arbitrariness in application of the age categories, 20 C.F.R. § 404.1563(b) "provides a means of softening the edges of those categories." *Daniels*, 154 F.3d at 1133. Section 404.1563(b) states:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in your case.

Indeed, the ALJ "may not apply the [Guidelines] 'conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule.'" *Daniels*, 154 F.3d at 1132 (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)). Therefore, in a "borderline situation" relying on the actual age of the claimant in applying the Guidelines is inappropriate because "the Commissioner will not have shown that 'the claimant's characteristics precisely match the criteria of a particular rule.'" *Id.* at 1135. In such a "borderline situation" the ALJ "must determine based on whatever evidence is available which of the categories on either side of the borderline

best describes the claimant." *Id.* at 1136. Once the ALJ has done so, he may apply the Guidelines using the age category he determined was most appropriate. *Id.* The Tenth Circuit has held that as long as six months is a "borderline situation." *Cox v. Apfel*, 166 F.3d 346, 1998 WL 864118, at *4 (10th Cir. Dec. 14, 1998) (unpublished)[4]; *see also Daniels*, 154 F.3d at 1133 (holding that 65 days is a "borderline situation"). A claimant's age is measured at the time the claimant was last insured. *Daniels*, 154 F.3d at 1132 n.4 ("Because disability must be shown by expiration of insured status, the last day of [the claimant's] insured status . . . is the appropriate date for determining applicability of the [Guidelines]." (internal citation omitted)).

In this case, at the time she was last insured, Hanks was three months and four days short of entering the "closely approaching advanced age" category. Under the Guidelines, Hanks would have been considered presumptively disabled under Rule 201.14 had she been considered "closely approaching advanced age" rather than a "younger individual". Therefore, she argues that remand is appropriate because the ALJ did not comply with 20 C.F.R. § 404.1563(b) and *Daniels* by expressly considering which age category was most appropriate based on outside factors. The Commissioner argues that (1) this is not necessarily a "borderline situation" as the regulations do not provide guidance as to what constitutes a "borderline situation" and (2) the ALJ properly applied the "younger individual" category based on Hanks's education, past relevant work experience, and medical record. I agree with Hanks.

---

[4] Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

7

First, I am persuaded that three months and four days constitutes a "borderline situation" given *Daniels*, 154 F.3d at 1133 (65 days is borderline) and the persuasive value of *Cox*, 166 F.3d 346, 1998 WL 864118, at *4 (six months is borderline). Second, there is no evidence in the ALJ's opinion that he considered the "borderline situation" or used outside factors to determine whether Hanks should be categorized as a "younger individual" or a "person approaching advanced age." At no point did he address whether Hanks would be able to adapt to other work in a new work environment given outside factors such as her medical status, education, age, and work experience. In fact, he merely stated "[t]he record shows that the claimant was 49 yeas old on December 31, 1999, a 'younger individual' as defined in 20 CFR § 404.1563." (Admin. R. at 22.) Although the ALJ does contemplate Hanks's RFC and education[5], he does so only in applying the Guidelines and not in determining what age category to use. *Id.* Therefore, I conclude that remand is appropriate based on the ALJ's failure to consider Hanks's borderline situation.

2. Dr. Rudophi's Opinion

Next, Hanks argues that the ALJ erred in affording little to no weight to an opinion by Dr. Rudolphi, her treating physician, regarding Hanks's medical status prior to December 31, 1999. An ALJ is required to consider submitted medical opinions in addition to the evidence as a whole. 20 C.F.R. § 416.927(b). Generally, treating source opinions are given controlling weight if they are "well-supported by medically acceptable

---

[5] I also note that the ALJ did not expressly address her past relevant work activity in the context of the Guidelines. Such a discussion is also appropriate on remand.

8

clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the case file." *Id.* § 416.927(d)(2). When a treating source opinion is found to be inconsistent with the other substantial evidence in the case file, "the ALJ's task is to examine the other physician's reports to see if they outweigh the treating physician's report, not the other way around." *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (internal quotation and brackets omitted) (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988)). Treating sources that are not given controlling weight and all other medical opinions are weighed by evaluation of a number of factors: (1) examining relationship; (2) treatment relationship including the length of relationship and frequency of examination and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) any other relevant factors. 20 C.F.R. § 416.927(d). The ALJ must give "good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (citation omitted). When a treating source opinion is rejected completely, the ALJ must give "specific, legitimate reasons for doing so." *Id.*

"[A] treating physician may provide a retrospective diagnosis of a claimant's condition." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990). The relevant inquiry, however, remains "whether the claimant was actually *disabled* prior to expiration of her insured status." *Id.* at 1348–49 (alteration in original); *see James v. Callahan*, 124 F.3d 216, 1997 WL 545579, at *2 (10th Cir. Sept. 4, 1997) (unpublished) ("While there is a retrospective opinion by a treating physician in the

9

record that plaintiff probably had degenerative changes in his right knee during the relevant time period, there is no evidence in the record that plaintiff's knee pain, either alone or in combination with his heart problem, had reached a disabling degree of severity before December 31, 1989. Plaintiff's own testimony, without more, is insufficient to establish such disability."). This means, that although a retrospective diagnosis may be taken into consideration, such a diagnosis "without evidence of actual disability is insufficient." *Potter*, 905 F.2d at 1349.

The medical opinion at issue in this appeal is a Physical Functional Capacity Questionnaire completed by Dr. Rudolphi indicating that Dr. Rudolphi believed Hanks was unable to work prior to December 31, 1999. The ALJ afforded this opinion no weight based primarily on the fact that Dr. Rudolphi "acknowledges that he did not see the claimant at all prior to 2000 when the objective evidence demonstrates a significant aggravation of the claimant's condition." (Admin. R. at 21.) The ALJ stated that "[w]hile the treating physician is generally entitled to considerable weight in the evaluation process, his opinions are not controlling for issues when he has neither a treating relationship nor objective findings to support his conclusions." *Id.* The ALJ further noted that "Dr. Rudolphi's opinion is not based on any objective medical evidence likely to enable him to project into the earlier period." *Id.*

Hanks argues that the ALJ erred by not giving Dr. Rudolphi's opinion controlling weight because (1) the ALJ's determination was contrary to other objective evidence on the record; (2) the ALJ did not evaluate the six factors required to determine weight of medical opinions, *see* 20 C.F.R. § 416.927(d); (3) the ALJ failed to provide specific legitimate reasons for rejecting Dr. Rudolphi's opinion; and (4) assuming the medical

10

evidence was ambiguous, the ALJ erred in not obtaining a medical expert. The Commissioner argues that the ALJ properly rejected Dr. Rudolphi's retrospective opinion as contrary to other medical evidence and not based on Dr. Rudolphi's personal treatment relationship with Hanks. The Commissioner further argues that the medical evidence was not ambiguous and, therefore, it was not necessary to obtain a medical expert. I agree with the Commissioner.

The ALJ specifically considered the retrospective opinion of Dr. Rudolphi and determined that it was "not persuasive" because it was (1) retrospective in that Dr. Rudolphi was not Hanks's treating physician during the relevant time; (2) not based on objective evidence; (3) occurring after a significant change in Hank's medical status—the development of necrotizing fasciitis in her left leg; and (4) inconsistent with the rest of the medical record. Although he did not expressly compare Dr. Rudolphi's conclusions with Hanks's medical records prior to December 31, 1999, the ALJ did address Hanks's medical records from the relevant time frame. He noted that the record indicated that she "had a long history of hypertension, Type II diabetes mellitus and obesity." (Admin. R. at 20.) He further noted that she consistently had difficulty controlling her diabetes and hypertension. Finally, he noted that Hanks's medical records indicated that at no time prior to December 31, 1999 did Hanks exhibit "a cardiac disturbance that in association with her obesity precluded her ability to perform work" or "a vision disturbance that in combination with her obesity, hypertension and diabetes mellitus limited her ability to perform work." *Id.* Therefore, it appears that the ALJ properly examined the medical record to determine if it was inconsistent with Dr. Rudolphi's opinion. Although the ALJ did not expressly consider the factors in 20 C.F.R.

11

§ 416.927(d), he was not required to do so. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Finally, the ALJ also took into consideration that Hanks's leg infection, a significant change in her medical status and apparently her most impairing medical issue, occurred prior to when Dr. Rudolphi began treating Hanks and after the date she was last insured for disability benefits. Based on all the ALJ's determinations, I conclude that he provided "specific, legitimate reasons" for rejecting Dr. Rudolphi's retrospective opinion. *Langley*, 373 F.3d at 1119 (citation omitted).

With respect to obtaining a medical expert, I do not think that the medical record was ambiguous such that the ALJ was required to obtain a medical expert. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) ("Ruling 83-20 recognizes that it sometimes may be necessary to infer the onset date. The ALJ then should call on the services of a medical advisor at the hearing. However, a medical advisor need be called only if the medical evidence of onset is ambiguous."); Social Security Ruling ("SSR") 83-20. The ALJ properly rejected the only opinion that stated that Hanks's overall disability occurred prior to December 31, 1999. The remaining medical record was not ambiguous as the onset date of Hanks's medical issues—she suffered from obesity, hypertension, and diabetes prior to December 31, 1999 and as far back as 1979, and suffered from necrotizing fasciitis from May 2000.

I also note that Hanks appears to argue that the ALJ erred in determining that she was not fully credible with respect to her medical condition prior to December 31, 1999. Credibility determinations are peculiarly the province of the finder of fact and the ALJ is accorded substantial deference in these matters. *Williams v. Bowen* , 844 F.2d

748, 755 (10th Cir. 1988). The ALJ determined only that Hanks was not credible as to her allegations of her disability prior to December 31, 1999 referencing her demeanor as a witness and the medical record. The ALJ did not, however, provide specific reasons for finding Hanks not credible. As remand is appropriate on other grounds, I need not decide if the ALJ's credibility determination is entitled to deference. However, I do caution that on remand, the ALJ should more explicitly demonstrate the reasons for any credibility determination.

3. <u>Severe Impairments</u>

Hanks also argues that the ALJ erred "in not finding that she had severe impairments." However, the ALJ expressly determined that Hanks's diabetes mellitus, hypertension, nectrotizing fasciitis of th left leg and obesity were severe impairments when considered in combination. (Admin. R. at 19.) Therefore, Hanks's argument is moot and remand is not warranted based on this argument.

4. <u>RFC</u>

Finally, although the argument is substantially undeveloped, Hanks argues that the ALJ erred in determining her RFC. First, she argues that the ALJ failed to evaluate obesity at step three. Second, Hanks argues that the ALJ incorrectly used the "ability to perform work" standard which does not take into account working a full-time schedule, as is required. The Commissioner responds only that the ALJ evaluated Hanks's RFC based on the record as a whole and the record did not indicate that Hanks's impairments resulted in any disabling functional limitations.

With respect to consideration of obesity at step three, Social Security Ruling 00-3p does require that the ALJ consider obesity in combination with other impairments at

step three. Indeed, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p at Question 7. Furthermore, the regulations provide that "[w]e will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." *Id.* In this case, the ALJ considered obesity at step three stating that "[t]he medical evidence indicates that the claimant has diabetes mellitus, hypertension, necrotizing fasciitis of the left leg and obesity, impairments that are 'severe' in combination but not 'severe' enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4., on or before December 31, 1999[,] the date she is last insured for disability purposes." (Admin. R. at 20.) The ALJ also expressly noted that "[b]ased on the longitudinal medical history, at no time prior to December 31, 1999 when she last met the earnings requirement did the claimant's obesity materially affect her ability to perform work." *Id.* Finally, he considered Hanks's obesity when determining that she did not have a cardiac disturbance or vision disturbance. Therefore, as the ALJ expressly noted Hanks's obesity in applying step three and at other stages of his evaluation, Hanks's argument is without merit.

Conversely, Hanks's argument that the ALJ erred by applying the wrong standard when he determined her RFC as "capable of sedentary work activity" warrants remand. First, although not argued by the parties, I note that the ALJ determined Hanks's RFC as limited to sedentary work after May 2000. *Id.* at 21. This date, however, is past the date that Hanks was last insured and is, therefore, irrelevant to the

14

determination that Hanks was disabled. *See Potter*, 905 F.2d at 1348–49. The ALJ used this RFC to complete steps four and five of the evaluation even though he consistently noted that Hanks's date last insured was December 31, 1999.[6] Therefore, as the ALJ completed steps four and five of the evaluation based on physical limitations incurred outside the relevant period, remand is appropriate.

I also note that the ALJ erred in his determination of Hanks's RFC in that he did not engage in a "function-by-function" assessment of Hanks's work related abilities and limitations before he described her limitations in terms of an exertional limitation such as "sedentary." *See* SSR 96-8p ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). Again, although this argument was not expressly raised by the parties, I conclude that an instruction to the ALJ to cure the deficiency on remand is appropriate. Similarly, Hanks's argument concerning the standard applied by the ALJ also warrants an instruction on remand. The ALJ determined that Hanks was "capable of sedentary work activity." (Admin. R. at 21.) The ALJ also stated that "[t]he term 'residual functional capacity' is defined in the Regulations as 'the most an individual can still do after

---

[6] I also note that later in the opinion, the ALJ stated that Hanks was limited to sedentary activity prior to December 31, 1999 (Admin R. at 22); however, he was referencing his prior determination which was based on May 2000. At the very least, this indicates some lack of clarity as to what Hanks's RFC was prior to December 31, 199—an issue that should be addressed on remand.

15

considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.'" *Id.* at 22 (citing 20 C.F.R. § 404.1545 and SSR 96-8p). These standards applied by the ALJ are based on the express definitions contained in the Regulations; therefore, I do not think that the ALJ applied an incorrect standard in determining Hanks's RFC. However, the ALJ did not expressly discuss Hanks's ability to engage in work for eight hours a day, five days a week. *See* SSR 96-8p ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Therefore, an instruction to expressly consider and discuss Hanks's limitations with respect to a full time work schedule is appropriate.

## Conclusion

Based upon my review of the record in this case, I find that the ALJ erred by failing to expressly address Hanks's borderline situation when applying the Guidelines at step five. I also conclude that, on remand, the ALJ must assess Hanks's RFC based on the date she was last insured (that is, December 31, 1999), rather than May 2000 (the date used in the ALJ's decision). Additionally, I instruct the ALJ to explicitly and adequately address the reasons for his credibility determinations, engage in a "function-by-function" assessment of Hanks's work related restrictions at step four, and consider Hanks's work related restrictions with reference to a full time work schedule. The

determination that Hanks is not disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on August 29, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge